EMILIO VÉLEZ SANTIAGO, Plaintiff and Appellee, v. LUIS RÍOS FLORES, Defendant and Appellant.

No. 11158. Argued May 3, 1954.—Decided July 7, 1954.

García Méndez & García Hermida for appellant. José Luis Méndez for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

By public deed of November 27, 1950, Emilio Vélez Santiago and his wife leased to Luis Ríos Flores a rural property having an area of 36 cuerdas in Barrio Robles of San Sebastián, with a dwelling, a storage house, and another house for storing farm implements. The annual rent was fixed at $600. One of the conditions of the deed provided that "the lessee shall be precluded from establishing any easement on the lands so leased, *and he is further absolutely forbidden to fell the royal palms and fruit trees,*" (italics ours) and that "the lessors . . . agree to sell to Luis Ríos Flores, for the cash sum of eight thousand five hundred dollars ($8,500) the property involved in this lease at any time the lessee chooses to do so during the five-year period of this lease . . ."

The lessee came into possession by virtue of that contract. Shortly after a year had passed the lessors filed in the former District Court of Puerto Rico, Aguadilla Section, a complaint for resolution of the lease contract and for damages. They alleged therein that they were the owners of the property in question, that they complied with the conditions of the contract, but that the lessee failed to do so by ordering on October 22 and 23 and December 15, 1951 "his laborers

to fell . . . 27 royal palm trees, 4 coconut trees, 7 bread-fruit trees, 2 avocado trees, 2 orange trees, 1 sweet-lemon tree, 3 gourd trees, and one *coyote* palm tree." As second cause of action, it was alleged that plaintiff sustained the damages therein recited. Request is made for annulment and rescission of the contract, for the payment of $464 which represents the value of the trees and palms destroyed, $700 for depreciation in the value of the property, plus costs and attorney's fees. The defendant answered. The case went to trial and thereupon the lower court rendered judgment sustaining the complaint, decreeing the rescission of the lease contract, and ordering defendant to pay $464 as compensation for the trees destroyed, plus $700 for shrinkage of the market value of the property by reason of the damages, plus $200 for attorney's fees and costs.

The defendant took a timely appeal. He contends that the trial court erred: (1) in considering the contract as rescinded; (2) in ordering, without sufficient evidence, appellant to pay the sum of $464 for damages caused by the felling of the trees; (3) in ordering the payment of $700 for alleged depreciation in the market value of the leased property by reason of the felling of the trees, for which it had already awarded an indemnity of $464, especially without a scintilla of evidence to establish such depreciation; and (4) in awarding the sum of $200 for attorney's fees and the costs of the suit.

Section 1444 of the Civil Code, 1930 ed., as amended by Act No. 220 of May 12, 1942 (Sess. Laws, p. 1176), provides that:

"The lessor is obliged:
"1. To deliver to the lessee the thing which is the object of the contract.
"2. To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined.

"3. To maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract.

"4. To sign and deliver to the lessee a receipt for each payment made by the latter."

Section 1445 provides that

"The lessee is obliged:

"1. To pay the price of the lease in the manner agreed upon.

"2. To use the thing leased as a diligent father of a family would, applying the same to the use agreed upon; and, in the absence of an agreement, to the use which may be inferred from the nature of the thing leased according to the custom of the land.

"3. To pay the expenses arising from the instrument constituting the contract."

And § 1446 that:

"If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they *may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force.*" (Italics ours.)

The instant case does not, however, involve the failure to comply with any of the obligations enumerated in § 1444 or § 1445 of the Civil Code. Consequently, nothing therein provided may serve as a basis for determining whether or not the rescission of the contract in the instant case is proper.[1]

However, we have § 1243 of the Civil Code, 1930 ed., which provides, on the one hand, that "The following may be rescinded: . . . (5) Any other contracts specially determined by law", and § 1077 of the same Code which provides that:

"The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him," and that "The

---

[1] The provision of § 1446 does not alter or limit, however, the effectiveness of § 1459 of the Code, which recites the causes for dispossession. 10 Manresa, *Código Civil Español* 5th ed., 1950, p. 568.

person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. . . ."

And on the other hand § 1459, *supra*, which provides:

"The lessor may judicially dispossess the lessee for any of the following causes:

". . . . . . . .

"3. Infraction of any of the conditions stipulated in the contract."

Thus, according to the latter provisions, in addition to contracts which may be expressly rescinded under § 1243, there are others which can be rescinded by express provision of law, as for example, the lease contract whenever the lessor or the lessee fails to comply with the obligations enumerated in § § 1444 and 1445 of the Civil Code [2] —Scaevola, *Civil Code*, Vol. 24, part one, 1952 ed., p. 540; Manresa, *op. cit.*, Vol. 8, 1950 ed., p. 552. And in the case of mutual obligation, if one of the obligated persons does not comply with what is incumbent upon him, the other party may petition for its resolution.

In the contract of lease herein involved it was expressly stipulated that the lessee was absolutely forbidden to fell the royal palms and fruit trees. "Absolutely" means "in an absolute or conclusive manner," and "absolute" means "clear, precise, conclusive." *Diccionario de la Lengua Española, Real Academia Española*, 17th ed., 1947, p. 1112. The lower court concluded that the defendant had felled trees and palms which were new and productive. That conclusion is supported by the evidence. It further appears from the evidence offered that the trees and palms destroyed were near the dwelling house; and that their destruction was voluntary and intentional. Consequently, there was a breach

---

[2] There are also text writers who maintain that among the affirmative rescission cases are the causes determinative of dispossess. 6 Oyuelos, p. 350; 5 *Id.* 463; 10 Manresa, *Civil Code*, 5th ed., 1950, p. 567.

of an essential and specific clause of the lease contract. Since that contract involved mutual obligations—see § 1077, *supra* —such a breach warrants its resolution.

The case of *Municipality* v. *Vidal*, 65 P.R.R. 347, discussed by appellant in his brief, may be distinguished. There Vidal and his wife constituted in favor of the Municipality of Ponce a perpetual servitude for the laying of the aqueduct pipes, including also a right of way alongside the pipes. In consideration of the servitude, the Municipality granted to Vidal and his wife the right of taking *ad perpetuam* 18,000 gallons of water each twenty-four hours, "it being understood that the owners of the property affected by the servitude shall be entitled to take a greater amount of water per day for the said purposes, paying, of course, the excess of water taken, according to the rate in force." Several years later the Municipality brought an action for rescission of contract against the spouses, alleging that the defendants, in violation of the aforesaid contract, connected 4 lines to the main pipe line, and that by using pumps and a motor windmill they had taken 624,000 gallons of water each 24 hours in excess of the 18,000 gallons granted under the contract. On appeal, we held that "the obligation, not being of a reciprocal character, does not give rise to the rescission of the contract," clarifying in note 3 appearing at the bottom of page 374 that, "Textwriters, cases and some codes use indistinctly the terms 'resolutory' and 'rescissory,'" and that "To authorize such action the unfulfilled obligation must be of a reciprocal character." We also stated in the opinion that, "There are also other obligations which are incorporated in contracts for the sole purpose of supplementing and clarifying the stipulations of the contracting parties, and which do not constitute the real motive for the contract and are known as accessory or complementary obligations," and that "The breach of these accessory or complementary obligations shall give rise to an action for

damages or to any other action justified under the special circumstances of each case, but never to the resolutory action regulated by § 1077 of the Civil Code, which is reserved exclusively for the breach of reciprocal obligations." We finally held that the obligation of the defendant not to use the water for purposes other than those stipulated, is an accessory or complementary obligation, and that such an obligation, not being of a reciprocal character, does not give rise to rescission of the contract. We ratify the holding in that case. See also in this connection the *Revista General de Legislación y Jurisprudencia*, Vol. 10, second series, 1945, p. 859, and Manresa, *op. cit.*, Vol. 8, part 1, p. 354, where it is further stated at p. 361 "that the action for resolution of contract requires an actual and adequate breach, which generally is not equivalent to a mere delay in payment, . . ." However, the situation here is different since in this case the lessor requests the rescission or annulment of the lease contract and also claims damages for the failure on the part of the lessee to comply with one of the clauses of the contract.

■ Had he so desired, the lessor could have requested the judicial eviction of the lessee for the alleged violation or breach. Section 1459 of the Civil Code, 1930 ed., subd. 3.

Commenting on § 1569 of the Spanish Civil Code, the same as our § 1459, Manresa, the learned text writer, in Vol. 10 of the text cited, says at p. 647 that:

"The performance of what has been legally covenanted is and has always been compulsory, and hence the violation or nonperformance of *any* of the conditions of a lease contract has been and is considered as a cause for dispossession. . . . 'According to § 1124 of the Civil Code (our 1077), the right to resolve reciprocal obligations, in case one of the obligors does not comply with what is incumbent upon him, is deemed to be implied' and *by means of unlawful detainer the lease contract is resolved or rescinded* by a brief proceeding in keeping with the nature of the subject matter. . . . (Italics ours.)

". . . . . . . .

"The breach of the contract referred to in the third cause of § 1569 of the Civil Code (our § 1459), in the sense that the lessor may base thereon an action to dispossess against the lessee, must be effectuated through fraud, fault, or negligence of the latter, . . ."

In the instant case, as has been pointed out, the violation of the contract was intentional.

Manresa further states at p. 648 of Vol. 10 of the text cited that: "Neither is the existence of a clause promising to sell (as is the case here) in favor of the lessee a bar to the exercise of an action to dispossess," citing from the Judgment of January 17, 1924 of the Supreme Court of Spain (161 *Jur. Civ.* 130). It will be recalled, as pointed out above, "that the action of unlawful detainer is equivalent to an action of resolution of the lease contract," which, otherwise stated, implies that every action of unlawful detainer implies or carries with it the resolution or rescission of the pre-existing lease contract. *Cf. Campos* v. *Superior Court*, 75 P.R.R. 348, 356. The first error assigned was not therefore committed.

In paragraph 3 of its findings of fact the lower court states "that defendant Luis Ríos Flores felled and destroyed 27 royal palms, 4 coconut trees, 5 avocado trees, 7 breadfruit trees, 5 orange trees, 2 sweet-lemon trees, 3 gourd trees, and one *coyote* palm tree for the purpose of planting sugarcane." Plaintiff was awarded the sum of $464 for the damages sustained by the destruction of those trees and palms. Plaintiff was the only one who testified on the value thereof and his testimony was in no way controverted. The lower court was therefore justified in considering the testimony and in determining the value of the trees destroyed in the amount fixed by plaintiff.

However, in addition to the fact that no evidence was offered on the depreciation of the market value of the leased property, a reason for holding that the award for damages on that account would not be in order, our opinion

814

is that in a case such as the one under consideration double damages can not be awarded for the same act, namely, the value of the trees destroyed and the depreciation in the value of the property as a result of the destruction. The lower court therefore erred in awarding the sum of $700 for the alleged depreciation.

 The imposition of the costs on the defeated party is mandatory. Act No. 411 of May 11, 1951 (Sess. Laws, p. 1094); *Colón* v. *Asociación Cooperativa Lafayette*, 67 P.R.R. 250. Moreover, according to the law, if the defeated party has acted with obstinacy the court will impose attorney's fees. It may be logically presumed that the defendant was ordered to pay the fees because he was considered obstinate—*Font* v. *Pastrana*, 73 P.R.R. 238, 242— and we cannot hold that the sum awarded was unreasonable.

The judgment appealed from will be modified by reducing the total amount for damages to $464, and, as thus modified, it will be affirmed.

Mr. Chief Justice Snyder, Mr. Justice Ortiz and Mr. Justice Belaval dissented.